ALTENBERND, Acting Chief Judge.
The State has filed two petitions for certiorari or mandamus in four juvenile proceedings.[1] The State wants this court to compel the trial court to issue an order to take each child into state custody because each child failed to appear for a juvenile delinquency proceeding after a summons was mailed to his or her last known address. We deny the petitions. If a child has been released from state custody before a petition for delinquency is filed and without receiving a notice to appear pursuant to Florida Rule of Juvenile Procedure 8.045, we conclude that proper notice for purposes of section 985.207(l)(c), Florida Statutes (1997), is not accomplished by first class mail. Cf. A.M.W. v. Portesy, 714 So.2d 1170, 23 Fla. L. Weekly D1816 (Fla. 2d DCA July 29, 1998). Even if a juvenile does not appear for arraignment when properly noticed, we conclude that a trial court has discretion to decline to issue an order to take the child into custody under the language of section 985.207.
I. CASE NUMBER 98-00159 J.A. AND E.G.
J.A. and E.G. were “arrested”[2] by a deputy sheriff on September 16, 1997, for loitering and prowling and possession of burglary tools. They were sixteen and seventeen years old, respectively, at the time. Although the record is not entirely clear, we assume that each juvenile was taken to a juvenile assessment center[3] for intake,[4] and subsequently released.[5] Thereafter, the State filed petitions for delinquency in November 1997. The State did not employ a process server to serve these petitions. Instead,- the State mailed a notice of hearing, a summons, and a copy of the petition .by first class mail to the last known address of each juvenile. These addresses had been provided by the juveniles at the time of their arrest. Neither J.A. nor E.G. appeared for arraignment. It is significant that both juveniles had last known addresses in Ronkonko-ma, New York, and may be illegal aliens. The State requested that the trial court issue orders to take the two juveniles into custody for failing to appear at arraignment. The trial court declined, reasoning that it had no established jurisdiction over the two juveniles.
II. case NUMBER 98-00159 W.S.T.
W.S.T. is very similar to the cases of J.A. and E.G. She was “arrested” on August 28, 1997, for battery, arising out of an altercation at a middle school. This four,teen-year-old girl was released by the juvenile assessment *322 center to her uncle, who was her legal guardian at the time. Shortly after her release, the State believes she moved to Michigan to be with her mother, and later moved to Indiana to stay with her grandmother. The State mailed its notice, summons, and petition to the uncle’s address in November 1997, after the child moved from Florida. She did not appear for arraignment, and the trial court again concluded that it lacked personal jurisdiction to order W.S.T. taken into custody-
ill. CASE NUMBER 98-00540 S.C.W.
S.C.W. was arrested for possession of marijuana on May 20, 1997, when he was seventeen years old. He provided his father’s address in Largo, Florida, as his last known address, but indicated that his mother lived in Las Vegas, Nevada. The State filed a petition for delinquency in June 1997, and mailed the summons and a copy of the petition to his father’s address. S.C.W. did not appear for arraignment at the scheduled time in July. His father, however, sent at least two communications to the court and personally appeared for a hearing in another delinquency proceeding. The father’s letters explained that his ex-wife had legal custody of their child. Moreover, the father stated that the boy had left Florida and had gone to Seattle, Washington, to face more severe charges, probably as an adult. The father apparently provided S.C.W.’s telephone number in Seattle to a probation officer who was assigned his son’s case.
At a hearing on September 8, 1997, the court appointed a public defender to pursue a plea in absentia. On September 16,1997, the court entered an order declaring “jurisdiction over the child and the subject matter involved in this proceeding.” The public defender sent communication to S.C.W. through his probation officer in Seattle. When S.C.W. did not respond or appear at a rescheduled arraignment on September 16, 1997, additional attempts were made to obtain a plea in absentia. Finally, in December, when the juvenile still did not appear, the trial court refused to issue a pickup order. On January 15, 1998, the trial court issued a carefully considered order reasoning that it had no lawful authority to issue a pickup order for a juvenile who was no longer in state custody and had not been formally served with a summons.
IV. THE NOTICE REQUIRED TO INVOKE SECTION 985.207(1)(C)
The parties involved in these cases have analyzed the legal question as one of jurisdiction over the person of the juvenile. The State argues that the trial court had jurisdiction over the person of the juveniles in these cases because section 985.219(7), Florida Statutes (1997),[6] provides that the court’s jurisdiction “shall attach to the child” when a summons is served on the child and a guardian or “when the child is taken into custody with or without service of summons and before or after the filing of a petition, whichever first occurs_” “Taken into custody” has a statutory definition:
“Taken into custody” means the status of a child immediately when temporary physical control over the child is attained by a person authorized by law, pending the child’s release, detention, placement, or other disposition as authorized by law.[7]
The State argues that the juveniles were taken into custody by the deputy sheriffs or by officials at the juvenile assessment centers, and that the court had jurisdiction over their persons from that moment forward— even if no petition alleging delinquency was ever filed.
This argument is too simplistic because the issue is whether a pickup order must be signed by the judge in these cases, not whether the court has some level of jurisdiction over the juvenile. The concepts of “custody” and “taken into custody” are used many times in chapter 985 and in the Florida Rules of Juvenile Procedure. For example, a child “taken into custody” may be released to an assessment center, that in turn may “release” the child from custody. See § 985.211(2)(f), Fla. Stat. (1997). Indeed, the title of the section concerning the type of *323 pickup orders at issue in this case is “Taking a Child Into Custody.” See § 985.207(l)(c), Fla. Stat. (1997). Thus, a child may be “taken into custody” for failure to appear at a hearing, even though he or she was already “taken into custody” by a law enforcement officer. Finally, “taken into custody” is also a term used to determine the period for speedy trial in juvenile cases. See Fla. R. Juv. P. 8.090; State v. M.S.S. 436 So.2d 1067 (Fla. 2d DCA 1983). Thus, it appears that the analysis used to determine whether a pickup order may issue must involve a more precise analysis.
Section 985.207(l)(c) states • that a child “may” be taken into custody “for failing to appear at a court hearing after being properly served.” Upon the face of this statute, the dispositive issues in this case are: (1) whether a juvenile is “properly served” when the summons and petition are mailed, first class, to the juvenile’s last known address, and (2) whether a trial judge must sign a pickup order for a child eligible for pickup under this statute whenever the State requests such an order.
We agree with the trial court that proper notice for purposes of section 985.207(l)(c) requires more than á simple letter to a last known address. Even if a child has been “taken into custody,” Florida Rule of Juvenile Procedure 8.040(a) requires that a summons be issued and served upon a child “who is not detained.” If it is likely that such service will be difficult or impossible, the State always has the option of giving the child actual notice while he or she is detained by employing the notice to appear procedures in rule 8.045. Those procedures, which were not used in these cases, expressly provide for an order to take into custody if the child does not appear.
Even if there had been proper notice in this case, we doubt that we would have issued a writ of mandamus or certiorari to compel the trial judge to execute pickup orders in these cases. Section 985.207 describes circumstances in which a child “may” be taken into custody. We conclude that the legislature intends to give the trial judge some degree of discretion concerning this power.' Thus, mandamus is not an appropriate remedy.- See Buckhalt v. McGhee, 632 So.2d 120, 121 (Fla. 1st DCA 1994) (“Mandamus. will not lie when the official against whom a petition for mandamus is sought has any discretion in the performance of the act petitioner seeks to compel.”).
These cases all involve juveniles who appear to have left Florida permanently. With the possible exception of W.S.T., no victims of crime are due any restitution. The charges involved are relatively minor, and the expense of transporting these juveniles back to Florida to face these charges would be significant. So long as the trial court has any discretion in this process, these decisions did not depart from the essential requirements of the law, as required for this court to issue a writ of common law certiora-ri.
Petitions for writ of certiorari or mandamus denied.
WHATLEY and NORTHCUTT, JJ., concur.

. These two appellate cases arise out of four separate circuit court cases. Technically, the State should have filed separate original proceedings for each circuit court case. The appellate issues are interrelated. Accordingly, the court has consolidated the two appellate proceedings for purposes of this opinion only.

. Although it is common to refer to an ‘‘arrest” of a juvenile, and the juvenile complaints in this record refer to a "date arrested,” a child is "taken into custody,” rather than “arrested." § 985.207(3), Fla. Stat.(1997); § 39.037(3), Fla. Stat. (1995).
The juvenile delinquency statutes were revised and moved from chapter 39 to chapter 985, effective October 1, 1997. These amendments do not appear to change our analysis. All three of these juveniles were "taken into custody” prior to the amendments, but the petitions were filed after the effective date of the new amendments. This opinion cites to both statutory versions, although the pickup orders would have been issued under the new chapter.

. See § 985.207(3), Fla. Stat.(1997); § 39.0471, Fla. Stat. (1995).

. See § 985.03(29), Fla. Stat.(1997); § 39.001(33), Fla. Stat.(1995).

. See § 985.21 l(2)(a), Fla. Stat. (1997); § 39.038(2)(a), Fla. Stat.(1995).

. See § 39.049(7), Fla. Stat.(1995).

. § 985.03(53), Fla. Stat. (1997); § 39.01(70), Fla. Stat. (1995).